

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
FEB 20 2018
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JAN KOWALSKI McDONALD,

    Plaintiff,

-against-

COOK COUNTY OFFICERS' ELECTORAL BOARD, DAVID ORR in his official capacity as Cook County Clerk and Chairman, KIMBERLY FOXX, in her official capacity as Cook County State's Attorney and Member, and DOROTHY BROWN, in her official capacity as Clerk of the Circuit Court of Cook County and Member,

    Defendants.

**Complaint for Declaratory Judgment; Injunctive Relief; Violation of Civil Rights §1983; Violation of the Voting Rights Act of 1965**

1:18-cv-01277
Judge Joan H. Lefkow
Magistrate Judge Daniel G. Martin

Jury Trial: ■ Yes ☐ No
*(check one)*

## COUNT I: COMPLAINT FOR DECLARATORY JUDGMENT; COUNT II: COMPLAINT FOR INJUNCTIVE RELIEF; COUNT III: COMPLAINT FOR CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983

**I.   The Parties to This Complaint**

    **A.   The Plaintiff(s)**

1.   Plaintiff-Candidate, JAN KOWALSKI McDONALD ("Jan"), is a resident and registered voter in unincorporated LaGrange, County of Cook and State of Illinois.

2.   She is a candidate for election to the Office of the Cook County Clerk, County of Cook, State of Illinois at the March 20, 2018 Primary Election, and she was a respondent before the Cook County Electoral Board.

    **B.   The Defendant(s)**

3. Defendant, COOK COUNTY OFFICERS ELECTORAL BOARD ("CCCOEB"), is a statutory entity with the power to determine the validity of nomination papers pursuant to the objection procedures set forth in Article 10 of the Illinois Election Code.

4. Defendant, KIMBERLY FOXX, in her official capacity as Cook County State's Attorney and CCCOEB Member.

5. Defendant, DOROTHY BROWN, in her official capacity as Cook County Clerk of the Circuit Court and CCOEB Member.

6. Defendant, DAVID ORR, in his official capacity as Cook County Clerk and CCOEB Member and Chairman of the CCOEB.

## II. Basis for Jurisdiction

7. Plaintiff brings this action under 42 U.S.C. §1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

8. Jurisdiction over the federal claims is conferred on this Court by 28 U.S.C. §1331 and §1343(a)(3) and (a)(4).

9. Jurisdiction to grant the declaratory relief requested is provided under 28 U.S.C. §2201. Venue is proper under 28 U.S.C. §1391.

10. The Rule 11 hearing of the CCOEB was held on February 15, 2018 and the Decision of the CCOEB was issued on February 20, 2018 in Chicago, Cook County, Illinois and jurisdiction in proper in the Circuit Court of Cook County.

11. All facts and events occurred in Cook County, Illinois and jurisdiction is proper in Cook County, Illinois.

## III. Facts Common To All Counts

12. Plaintiff is a Candidate for the Office of Cook County Clerk.

13. On December 4, 2017, Candidate submitted her Petition for Nomination to the Cook County Clerk for the March 20, 2018 Democratic Primary Election. Said Petition contains 22,057 signatures from Cook County voters.

14. A signature records examination conducted by the Cook County Clerk pursuant to an objection filed by Reginald Featherston Sr. found that Plaintiff's Petition contained far in excess of 5,000 valid signatures of Cook County Voters. The records examination confirmed on January 4, 2018 finding that Jan had 8,684 valid signatures of registered voters. Nevertheless, the objection proceedings continued as the objector made further allegation.

15. The February 20, 2018, CCOEB Decision sustained the objection as to Jan's Nomination Petition and removed Jan's name, from the March 20, 2018 primary ballot.

16. Section 7-10(a) of the Illinois Election Code, 10 ILCS 5/7-10(a) (2017), provides that candidates for Statewide Office such as Governor of Illinois need a minimum of 5,000 signatures on their nomination petition. These signatures can be obtained from anywhere in Illinois. All signatures could be obtained within Cook County. Therefore, 5,000 signatures from registered voters in Cook County would be sufficient to place a candidate for Governor of Illinois on the ballot for the Democratic Party nomination in the March 20, 2018 primary election.

17. Section 7-10(d)(1) of the Election Code, 10 ILCS 5/7-10(d)(1) (2017), provides:

> If a candidate seeks to run for countywide office in Cook County, then the candidate's petition for nomination must contain at least the number of signatures equal to 0.5% of the qualified electors of his or her party who cast votes at the last preceding general election in Cook County.

3

18. The definition of primary electors of the Democratic Party used here is the number of votes received by the Democratic candidate who received the most votes in Cook County in the November 2016 General Election.

19. Unfortunately, this election was subject to two events forging this large number. The first anomaly was that candidate was Karen Yarbrough ran unopposed for the Cook County Recorder of Deeds. Not coincidentally, Jan had sought to be a candidate for the office of Cook County Recorder of Deeds for this election, but had been removed from the ballot. Ms. Yarbrough being **unopposed** received 1,647,174 votes. 0.5% of that number is 8,236 signatures which equals the signature requirement for the March 20, 2018 Democratic Primary for Cook County offices.

20. The second anomaly was due to the November 2016 General Election coinciding with the United States presidential election, engendering a disproportionately higher voter turnout. This may be compared with the November 2014 General Election which did not coincide with the United States Presidential Election. In that election, the person who received the most votes on the county level, also running unopposed, was David Orr, receiving 520,441 votes. However, this was not an election coinciding with the United States presidential election. Apply 0.5% percent of this number would have resulted in a 2,602 signature requirement.

21. In the November 2016 General Election, after Karen Yarbrough, the next highest county vote getter was Kim Foxx receiving 626,545 votes, and then Dorothy Brown receiving 567,218. Both of these offices were contested. Applying this 0.5% to the highest contested vote getter, Kim Foxx, would result in a signature requirement of 3,132 votes. But for the anomaly of Yarbrough running unopposed in a presidential election year, this 0.5% requirement, based upon Kim Foxx as the highest contested vote

4

receiver, would have been significantly less, 3,132. This is more commensurate with the state gubernatorial signature requirement of 5,000. This Yarbrough anomaly has thereby skewed the results, undermined the legislative intention and has produced an arbitrary and capricious mathematical product. "Historical accident, without more, cannot constitute a compelling state interest." Socialist Workers Party, at 187.

22. Cook County is a county within the geographical boundaries of the State of Illinois having a population of 5.238 million people of which 2.705 million people are in Chicago. Cook County is located entirely within the State of Illinois. Cook County has a smaller population and territory than the State of Illinois. Cook County is but one of 102 counties that compose the territory of the State of Illinois.

23. The Governor of Illinois is a vastly more powerful, important, and significant office than the Cook County Clerk. The State of Illinois having a population of 12.8 million people.

24. Despite the fact that the Governor of Illinois is a more powerful, important, and significant office than Cook County Clerk, only 5,000 valid signatures from Cook County voters would be sufficient to put a candidate for Governor on the March 2018 Democratic ballot, but those same signatures would not be enough to put that candidate on the ballot for Cook County Clerk.

25. Records examination conducted pursuant to the petition challenge has established Plaintiff has in excess of 5,000 valid signatures. The signatures collected by Plaintiff would be sufficient for her to be placed on the Democratic Primary Ballot for Governor of Illinois. The requirement for 8,236 signatures is a requirement over 60% higher than that for Governor.

26. If Plaintiff is removed from the ballot for Cook County Clerk – the only remaining candidate will be Karen Yarbrough – slated by the regular Democratic Party – who will win the nomination again unopposed – without providing voters any choice or means of expression.

## COUNT I: COMPLAINT FOR DECLARATORY JUDGMENT

27. Plaintiff re-alleges and incorporates all her prior allegations made in this Complaint into this Count as if fully restated herein.

28. This case challenges as unconstitutional the Illinois Election Code's ballot access requirement that Jan as a 2018 Democratic Primary Candidate for county-wide office in Cook County must submit 8,236 valid signatures per 10 ILCS 5/7-10(d)(1), while candidates for Illinois statewide office such a Governor need only submit 5,000 signatures for access to the ballot.

29. Jan's removal from the ballot despite her having submitted signatures that would qualify her for the ballot for Governor of Illinois would mean that, contrary to the public interest, the election for Cook County Clerk would again be uncontested, one-candidate race.

30. Jan seeks a declaration that the Illinois Election Code is facially unconstitutional to the extent that it requires partisan candidates for local office to submit 8,236 signatures, 60% greater than the 5,000 signatures required for the statewide offices. A facial challenge requires the court to be vigilant in the protection of expressive freedoms. The Illinois Election Code has to be read together such that number of signatures under Section 7-10(d)(1) as to county offices cannot be greater than the number of signatures under Section 7-10(a) as to state offices. To the extent the Illinois

Election Code lacks any procedural safeguard to bring it in compliance with stare decisis, it must be declared facially unconstitutional.

31. Further, Jan seeks a declaration that the Illinois Election Code as applied to the March 20, 2018 democratic primary is unconstitutional. The effects of the excessive signature requirement have been realized in a concrete way by Jan. Jan wishes to engage in political activities but has been deterred from doing so by the artificially high signature requirement. Plaintiff's actual injury exists in being barred from exercising her right to free expression by requiring 3,236 additional signatures. Engrafting this additional 3,236 signature requirement onto the 5,000 signature requirement is costly, time-consuming, and has created an impenetrable barrier to ballot access for Jan, a reasonably diligent candidate. This additional signature requirement created a substantial and realistic barrier to Plaintiff.

## Statute Violates Equal Protection

32. The United States Constitution's Equal Protection Clause, U.S. Const. Amend. XIV, §1, provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." The United States Supreme Court held in *Illinois State Board of Elections v. Socialist Workers Party* that it was a violation of Equal Protection rights for the Illinois Election Code to require that a candidate for local office be required to submit more signatures than a candidate for statewide office. 440 U.S. 173, 187 (1979).

33. The Seventh Circuit Court of Appeals held that the Equal Protection analysis equally applies to candidates running in established party primaries, such as those in the present case. *Gjersten v. Board of Election Com'rs for City of Chicago*, 791 F.2d 472, 475-476 (C.A.7 (Ill.), 1986).

34. Ballot access is a fundamental right and strict scrutiny must be applied.

35. Restrictions on ballot access must be narrowly tailored to advance a compelling state interest. In this case, following the analysis from *Socialist Workers Party* and *Gjersten*, the restriction that a candidate must obtain more than 8,236 signatures for the local office Plaintiff seeks is not narrowly drafted to advance any compelling state interest.

36. Whatever interest the state may have in setting a signature requirement – preventing ballot clutter, showing a modicum of support – would be satisfied for the office of Governor of Illinois by that candidate submitting 5,000 signatures from Cook County. Therefore, per the reasoning of *Socialist Workers Party* and *Gjersten*, it is a violation of Plaintiff's equal protection rights to require that she submit in excess of 5,000 signatures for her local office – since the State has determined that 5,000 Cook County signatures would satisfy all its compelling interests for Governor, requiring more than 60% more signatures for a local office is clearly not narrowly tailored.

37. If Defendants do not allow Plaintiff access to the March 20, 2018 primary ballot for the office that she seeks, despite her having in excess of 5,000 valid signatures on her nomination petition, Defendants would be violating Plaintiff's civil rights under the Equal Protection Clause of the Constitution.

### Statute Violates Jan's First and Fourteenth Amendment Rights

38. Courts have recognized that a facially neutral rule or practice which nevertheless results in disparate treatment having a discriminatory effect may violate constitutional rights as applied.

39. The First Amendment of the United States Constitution protects the Freedom of Association, and this right has been extended to the State actions by the Fourteenth Amendment. An election campaign is a means of disseminating ideas. Restrictions on

8

access to the ballot burden two distinct and fundamental rights, "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effective." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). The freedom to associate as a political party has diminished practical value if the party can be kept off the ballot. Access restrictions also implicate the right to vote because "voters can assert their preferences only through candidates or parties or both." *Lubin v. Panish*, 415 U.S. 709, 716 (1974). By limiting the choices available to voters, the State impairs the voters' ability to express their political preferences. Socialist Workers Party, 440 U.S. 173, 184. Voting is of the most fundamental significance under our constitutional structure. *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). States have a legitimate interest in regulating the number of candidates on the ballot. *Socialist Workers Party, id.* at 185. However, even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty," *Kusper v. Pontikes*, 414 U.S. 51, 58-59 (1973). The requirement of the least drastic means to achieve their ends is particular important where restrictions on access to the ballot are involved. *Socialist Workers Party*, at 185. Overbroad restrictions on ballot access jeopardize this form of political expression. *Id.*

40. CCOEB will be hard pressed to present any reason, much the less a compelling reason why the state needs a more stringent requirement for Cook County.

41. The United States Supreme Court has said that restrictions on ballot access burden two distinct and fundamental rights, "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Socialist Workers Party*, 440 U.S. at 184, quoting *Williams v. Rhodes*, 393 U.S. 23, 30 (1968).

42. In *Norman v. Reed*, the United States Supreme Court re-affirmed Socialist Workers Party and ruled again that the Illinois Election Code was unconstitutional where it required candidates for Cook county office to collect more signatures than candidates for statewide office. 502 U.S. 279, 293-294 (1992). While the *Socialist Workers Party* ruling was made using Equal Protection rationale, *Norman* employed a First and Fourteenth Amendment analysis, as explained in footnote 8:

> 8. As in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), "[w]e base our conclusions directly on the First and fourteenth Amendments and do not engage in a separate Equal Protection Clause analysis. We rely, however, on the analysis in a number of our prior election cases resting on the Equal Protection Clause of the Fourteenth Amendment. Id., at 786-87, n. 7, 103 S.Ct. at 1568-1569, n. 7.

43. Since ballot access affects fundamental rights, strict scrutiny must be applied. Restrictions on ballot access must be narrowly tailored to advance a compelling state interest. The restriction that a candidate must obtain 8,236 signatures for the County Office Plaintiff seeks is not narrowly tailored to advance any compelling state interest. The compelling state interest for its 12 million people population is quite literally 5,000 signatures. The compelling Cook County interest for its 5.238 million population is 8,236 signatures. Whatever interest the county may have in setting a signature requirement – preventing ballot clutter, showing a modicum of support – is well satisfied by the state requirement of 5,000 signatures. It is a violation of Plaintiff's equal protection rights to require her to submit sixty percent more than 5,000 signatures for a Cook County office – since the state legislature has provided that 5,000 Cook County signatures would satisfy all its compelling interests for governor. Requiring 60% more signatures for county office is clearly not narrowly tailored.

44. The additional 3,236 signatures is prohibitive. In order to secure the signatures of 3,236 registered voters, the guideline is to collect three times that amount due to some signers not being registered voters. For a candidate to secure 3,236 signatures of registered voters, a reasonably diligent candidate must realistically collect 9,708 signatures.

45. Candidate collecting signatures during rush hour at train stations was able to secure 60 signatures per hour and circulators were able on average to collect 30 signatures per hour during the same rush hour. However, at most there are four rush hours (7-9 a.m. and 4-6 p.m.) on the five work days or 20 hours weekly. It would take a circulator 323 hours or **sixteen** weeks to collect this amount of signatures. However, the circulation process is only twelve week duration. A reasonably diligent candidate is unable to collect this additional amount within twelve weeks.

46. The Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) recognized the time involved in seeking signatures, noted that early filing deadline violated the First and Fourteenth Amendments. Justice Stevens noted "in approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters."

47. At minimum wage ascribed to a circulator, the cost of these 323 hours at $8.25 per hour is an additional $2,664.75. Many potential office seekers lacking both personal wealth and affluent backers are, in every practical sense, precluded from seeking the nomination of their chosen party, no matter how qualified the candidate is and no matter how broad and enthusiastic the candidate's popular support. While not a fee collected directly by the election authority, there is nonetheless a fee associated with this additional requirement for 3,236 valid signatures. *Bullock v. Carter*, 405 U.S. 134

(1972) and *Lubin v. Panish*, 415 U.S. 709 (1974), found a per se filing fee violates the Equal Protection Clause.

48. The extent and nature of candidate restrictions must be examined in a realistic light. Candidate circulated from September 5, 2017 through December 4, 2017 within Cook County. Candidate had significant difficulty in circulating her petition among the Hispanic communities in Cook County, even though Candidate had Hispanic circulators speaking Spanish to voters. In the fall of 2017, a national debate emerged about "Dreamers" or Deferred Action for Childhood Arrivals ("DACA"). The Hispanic voters were fearful of signing believing, whether rightfully or not, that signing would give the government information for detention and deportation for immigration purposes.

49. The Nomination Petition is not written in Spanish, Chinese, Hindi, or Arabic among other languages and voters were reluctant to sign a document which they could not read.

50. Candidate had significant difficulty in circulating her Nomination Petition among women voters who are reluctant to provide their address to a stranger for fear of stalking. On one occasion, an older woman explained to a younger woman voter to sign and give her nearest street corners. This, of course, rendered an otherwise valuable voter's signature worthless.

51. Candidate had significant difficulty in circulating her Nomination Petition among older voters. These more mature voters were reluctant to provide anyone with their signature and their address fearing identity theft.

52. The additional 3,236 signatures is not problematic for the other remaining candidate for the Office of the Cook County Clerk slated by the regular Cook County Democratic Organization. The other candidate is the Sergeant at Arms for the

organization. The regular Democratic Organization provided a slate for incumbents, Preckwinkle, Berrios, Yarbrough, Dart, and Pappas. These slated candidates do not each have to have 8,236 minimum signatures. As all five were on the same nominating petition, there were able to share the signatures. Consequently, each of the five candidates needed to procure only 1,647 valid signatures.

53. Jan, as a grass roots challenger, could not run on a slate and was disadvantaged, not being endorsed by the regular Democratic Organization.

54. Four candidates initially filed Nomination Petitions for the Cook County Clerk: Karen Yarbrough; Nick Shields; Stephanie Joy Jackson-Rowe; and Plaintiff. Karen Yarbrough's slated petition contains over 30,000 signatures. Nick Shields presented 10,000 total signatures but withdrew his Nomination Petition. Stephanie Joy Jackson-Rowe presented 9,709 total signatures but after her records examination she had 1,329 fewer than the minimum and the Objection was sustained. Of the four candidates, only the slated candidate was able to secure over 8,236 signatures.

55. In the Cook County Sheriff's race, challenger Edward Acevedo presented 11,005 total signatures but after his records examination he had 2,582 fewer than the 8,236 minimum and the Objection was sustained.

56. In the Cook County Assessor's race, challenger Andrea Raila presented 23,357 total signatures. After her records examination she had 5,902 signatures above the minimum but the Board's Decision struck 8,471 signatures, leaving her 2,569 fewer than the 8,236 minimum and the Objection was sustained.

57. The powerful evidence is that a reasonably diligent candidate cannot be expected to be able to meet 8,236 valid signatures within 90 days requirements and gain a place on the ballot. It is crystal clear that these higher minimums in this 2018 election cycle

had a material negative effect on candidates' ability to obtain the necessary signatures. *See Stone v. Board of Election Com'rs for City of Chicago*, 750 F.3d 678, 681 (7th Cir. 2014).

58. This additional signature requirement implicates the Court's same Equal Protection Clause concerns.

59. Defendants did not allow Plaintiff access to the March 20, 2018 primary ballot for the office she seeks, despite having in excess of 5,000 valid signatures on her nomination petition. Defendants are violating Plaintiff's constitutional rights under the equal protection and the First and Fourteenth Amendments of the Constitution.

## COUNT II: COMPLAINT FOR INJUNCTIVE RELIEF

60. An immediate injunction prohibiting enforcement of any Cook County signature requirement above the statewide requirement of 5,000 for the March 20, 2018 Democratic Party Primary is necessary or else Plaintiff, Jan Kowalski McDonald will not be a candidate for the 2018 Democratic Primary for Cook County Clerk. This would happen despite the facts that Jan submitted a quantity 22,057 signatures far in excess of the 8,236 minimum signature requirement currently required under the Illinois Election Code. This would happen despite the fact that the biased and flawed records examination conducted by the Cook County Clerk has confirmed Jan submitted 8,684 valid signatures of registered Cook County voters. That means that the signatures submitted by Jan for Cook County Office, would have been sufficient to place her on the Democratic primary ballot for the Governor of Illinois.

61. The Defendant's Decision of February 20, 2018 removed Jan from the ballot finding she had 320 signatures below the statutory minimum. Although Jan was 448

signatures above the minimum, after the Defendant's deducted 768 signatures, Jan was 320 signatures below the statutory minimum.

62. Jan seeks a temporary restraining order, thereafter preliminary injunction and permanent injunction that prohibits Defendants from removing Plaintiff from the ballot for the March 20, 2018 Democratic Party Primary Election and orders Defendants to print her name on said Primary Ballot.

63. Absent prompt judicial intervention, Jan Kowalski McDonald, will be immediately removed as a candidate from the March 20, 2018 Democratic Primary Ballot. Early voting and mailing of absentee ballots commences on February 21, 2018.

64. Jan's removal from the ballot despite having submitted more than enough signatures to qualify means that contrary to public interest, the election for Cook County Clerk will be another uncontested, one-candidate race. Should Petitioner-Candidate's name be removed from the ballot, then there will only be one person on the ballot. There is no fear of ballot dilution should Candidate's name remain on the ballot until this Court rules on the underlying Petition. Conversely, should this Court reverse the Defendants' removal, Candidate will be severely prejudiced due to voting already having started.

65. At stake are the fundamental rights as to the freedom to associate as a political party and the right to cast votes effectively triggering strict scrutiny. The state's regulation of ballot access must be narrowly tailored as necessary to serve a compelling interest. Requiring 3,236 more signatures for Cook County candidates than the State of Illinois candidates is not narrow.

66. Candidate is a candidate for the Office of the Cook County Clerk in the March 20, 2018 Democratic primary.

67. Candidate's 22,057 voters who signed her Nomination Petition have a right to choose who they want on the ballot.

68. The Cook County Clerk verified Jan had 8,684 signatures of registered voters, needing 8,236, more than sufficient to entitle her to a place on the ballot.

69. Yet, the actions of the Defendants in their February 20, 2018 Decision removed Jan from the ballot.

70. A candidacy is not the exclusive property of the candidate. A candidacy is the expression of the popular will, of the signers of the petition, as well as of the candidate. Absent reversal, these signers may well be disheartened should they learn of what the electoral board has done. But they will be unable to express themselves as to that at the polls as only one name will be on the ballot. The Defendants' tactics must be condemned if the protections of strict scrutiny are to be effective.

71. A temporary restraining order and injunction are appropriate where to do otherwise would be fatal to a plaintiff's rights.

72. Candidate, Jan Kowalski McDonald, has demonstrated complete fulfillment of all requirements for a temporary restraining order, is established as follows:

   a. Jan will suffer immediate and irreparable injury if the Defendants are not restrained and enjoined from removing her from the March 20, 2018 ballot.
   b. Jan has prescribed precisely the injury that will occur unless the Defendants are restrained and enjoined from removing her from the March 20, 2018 ballot.
   c. Jan on the basis of the facts stated above, has shown that she has a great likelihood of success on the merits as the County 8,236 signature requirement is 60% higher than the 5,000 state signature requirement.
   d. Failure of this Court to act to preserve Jan's interest and the Cook County voter's interest will cause disproportionately greater harm to Jan than to the Board. The Defendants will not suffer harm if it is restrained and enjoined from removing Jan from the ballot.
   e. The status quo will be preserved during the pendency of these proceedings, and will enable the court to adjudicate the rights of the parties.

73. A temporary restraining order, and thereafter, preliminary injunction, should issue without the necessity of Candidate posting bond. Jan is a lifelong resident of Cook County, owning property in Cook County and working in Cook County.

## COUNT III: COMPLAINT FOR CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983

74. Jan incorporates Paragraphs 1 through 73 set forth above as though contained herein fully.

75. Jan has suffered a violation of her constitutionally protected rights under the First and Fourteenth Amendments to the United States Constitution and under the Illinois Constitution.

76. Jan suffered injury caused by the Defendants, acting under color of state law, unconstitutionally implementing or executing a policy, custom, usage, regulation, rule, or decision promulgated by the Defendants.

77. Defendants deprived Jan of her federal rights and acted under color of state law.

78. The Defendants have engaged in unconstitutional practices contravening Section 1983 and Section 1985, 42 USC 1983 and 1985.

79. The Defendants' disqualification of Jan's 22,057 Nomination Petition signers severely burdened Jan's First and Fourteenth Amendment rights under the United States Constitution.

80. The disenfranchisement of 22,057 signers of Jan's Nomination Petition operates to severely restrict First and Fourteenth Amendment rights which restriction is not narrowly drawn to advance the state's interest in minimizing party splintering, excessive factionalism, and ballot clutter. Clearly, ballot clutter will not be a problem since the

only other remaining candidate, endorsed by the regular Democratic Party, would be allowed to run unopposed, yet again.

81. Jan has suffered injury as a proximate result of the Defendants' actions in contravention of Section 1983 and 1985.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, JAN KOWALSKI McDONALD, respectfully requests that this Honorable Court:

A. Declare that the Illinois Code is unconstitutional to the extent that it requires Plaintiff, as a candidate for local office to submit more signatures than candidates for statewide office;

B. Issue a temporary restraining order, followed by a preliminary and permanent injunction, against Defendant and all those acting in concert enjoining Defendants from removing Plaintiff from the March 20, 2018 Democratic Party Ballot and from enforcing any signature requirement greater than 5,000 for the Cook County Clerk, and further ordering that Defendants print the name of Plaintiff on March 20, 2018 Democratic Party Ballot for the office of the Cook County Clerk, having submitted greater than 5,000 valid signatures; and

C. Award nominal damages, compensatory damages and punitive damages; and for such other relief as the court deems just and proper.

JAN KOWALSKI McDONALD

*/s/ Jan Kowalski McDonald*

Jan Kowalski McDonald
1918 West Cermak Road
Chicago, Illinois 60608
773/696-9698

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 2/20, 2018
Signature of Plaintiff: /s/ Jan Kowalski McDonald
Printed Name of Plaintiff: Jan Kowalski McDonald